UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TYLER V.,

                                    Plaintiff,

v.                                                                              8:22-CV-0901
                                                                                (ML)

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                                    Defendant.

_____

APPEARANCES:                                              OF COUNSEL:

TYLER V.
   *Pro se* Plaintiff
2091 Plumbrook Road
Norfolk, New York 13667


SOCIAL SECURITY ADMINISTRATION                 KRISTINA COHN, ESQ.
   Counsel for the Defendant
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235


MIROSLAV LOVRIC, United States Magistrate Judge

## <u>**ORDER**</u>

Currently pending before the Court in this action, in which Plaintiff seeks judicial review

of an adverse administrative determination by the Commissioner of Social Security, pursuant to

42 U.S.C. § 405(g), is a motion for judgment on the pleadings.[1]  Oral argument was heard in

_____

[1]        This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c),
has been treated in accordance with the procedures set forth in General Order No. 18.  Under
that General Order once issue has been joined, an action such as this is considered procedurally,
as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the
Federal Rules of Civil Procedure.  Defendant, the only moving party, argues that the ALJ's
sequential analysis and her ultimate determination that Plaintiff was not disabled were supported

connection with that motion on February 13, 2024, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination was supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1)     Defendant's motion for judgment on the pleadings (Dkt. No. 22) is GRANTED.

2)     The Commissioner's decision denying Plaintiff Social Security benefits is AFFIRMED.

3)     Plaintiff's Complaint (Dkt. No. 1) is DISMISSED.

4)     The Clerk of Court is respectfully directed to enter judgment, based upon this determination, DISMISSING Plaintiff's Complaint in its entirety and closing this case.


Dated: February 20, 2024
          Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

by substantial evidence. Plaintiff was represented by counsel during the administrative hearing and appeal process, but commenced this proceeding via pro se. Plaintiff has filed various correspondence and a copy of the Administrative Transcript with the Court, but has not filed a formal brief or other arguments responsive to Defendant's motion, despite being given an opportunity to do so. In the Northern District of New York, General Order No. 18 notifies parties of the consequences of failing to file a brief in connection with a Social Security action and, "A party's brief may be its only opportunity to set forth arguments that entitle the party to a judgment in its favor. The failure to file a brief by either party may result in the consideration of the record without the benefit of the party's arguments." A copy of General Order No. 18 was provided to Plaintiff on August 30, 2022, see Docket No. 4.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
TYLER V.,

                                        Plaintiff,

-v-                                     8:22-CV-901

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
-----------------------------------------------------x


            **SOCIAL SECURITY DECISION TRANSCRIPT**
        **BEFORE THE HONORABLE MIROSLAV LOVRIC**
                 February 13, 2024
        15 Henry Street, Binghamton, New York


For the Plaintiff:

      BY:  **TYLER V., PRO SE**

For the Defendant:

      SOCIAL SECURITY ADMINISTRATION
      6401 Security Boulevard
      Baltimore, Maryland 21235
      BY:  **KRISTINA D. COHN, ESQ.**


                *Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
                  *Official United States Court Reporter*
                        *100 South Clinton Street*
                     *Syracuse, New York 13261-7367*
                          *(315) 234-8545*

1           (The Court and all parties present by telephone.

2   Time noted:  1:08 p.m.)

3           THE COURT:  All right.  Well, the Court's going to

4   begin its decision analysis as follows:  First, I want to

5   reiterate that the Court has reviewed all of the briefs filed in

6   this case.  The Court has also reviewed the administrative

7   record that has been filed in this matter, as well.  The Court

8   has taken into account the arguments and comments made today by

9   both sides.

10          So as I indicated earlier, the Court is going to

11  render on the record here its analysis, reasoning, and decision,

12  and then I will have that transcribed and made available to both

13  sides in the written order that I file on the docket.

14          So the Court begins its analysis as follows:

15  Plaintiff has commenced this proceeding pursuant to Title 42,

16  U.S. Code 405(g) to challenge the adverse determination by the

17  Commissioner of Social Security finding that he was not disabled

18  at the relevant times and therefore ineligible for the benefits

19  that he sought.

20          By way of background, the Court sets forth the

21  following:  Plaintiff was born in 1997.  He is currently

22  approximately 26 years of age.  He was approximately 24 years

23  old on the date of his application for benefits.

24          Plaintiff stands approximately 6'0" in height and

25  weighs approximately 220 pounds.

1            Plaintiff attended regular education classes in high

2    school, and subsequently obtained his GED.  Plaintiff has a

3    limited employment history that includes short-term positions,

4    cooking in restaurants and kitchens.  Plaintiff testified that

5    he was terminated from his most recent position, as a cook at a

6    country club kitchen, partly due to his inability to meet the

7    job's lifting requirements.

8            Procedurally, in this case, the Court sets forth the

9    following:  Plaintiff applied for Title XVI benefits on

10   July 22nd of 2021, alleging an onset date of June 20th of 2021.

11           In his application for benefits, plaintiff claimed

12   disability based on mental health impairments, including

13   posttraumatic stress disorder, also referred to as PTSD, and

14   schizoaffective disorder.  During the administrative process,

15   plaintiff also reported chronic left shoulder pain resulting

16   from a 2018 injury.

17           Administrative Law Judge Gretchen Greisler conducted

18   a hearing on May 12, 2022, to address Plaintiff's application

19   for benefits.

20           ALJ Greisler issued an unfavorable decision on

21   May 25th of 2022.  That decision became the final determination

22   of the agency on August 17, 2022, when the Appeals Council

23   denied Plaintiff's request for review.

24           This action was commenced on August 30th of 2022 and

25   it is timely.

TYLER V. v. SOCIAL SECURITY                                    4

1            In her May 25th of 2022 decision, ALJ Greisler

2    applied the familiar sequential test for determining disability.

3            At step one, the ALJ concluded that plaintiff had not

4    engaged in substantial gainful activity from his application

5    date of July 22nd of 2021.

6            At step two, ALJ Greisler concluded that plaintiff

7    had the following severe impairments:  First, schizoaffective

8    disorder; second, adjustment disorder; third, ADHD; fourth,

9    substance use disorder; and fifth, complex regional pain

10   syndrome of the left upper extremity.

11           At step three, ALJ Greisler concluded that plaintiff

12   did not have an impairment or combination of impairments that

13   met or medically equaled the severity of one of the listed

14   impairments in 20 C.F.R. Section 416.920(c).  In making this

15   determination, the ALJ considered the following listings:

16   Listing at 1.18, dealing with Abnormality of Major Joint;

17   Listing 12.02, dealing with Neurocognitive Disorders; and

18   Listing 12.04, which deals with Depressive, Bipolar, and Related

19   Disorders.

20           Next, the ALJ determined that Plaintiff has the

21   residual functional capacity, also referred to as RFC, to

22   perform less than the full range of light work.  With regard to

23   physical limitations, the ALJ found Plaintiff can only lift and

24   carry up to 15 pounds; can frequently reach with the dominant

25   left upper extremity, but cannot reach overhead with the

1  dominant left upper extremity; cannot crawl; cannot climb,

2  cannot -- excuse me, let me begin that again -- cannot crawl;

3  cannot climb ladders, ropes, or scaffolds; and cannot work at

4  unprotected heights.  With regard to the mental health

5  limitations, the ALJ found that Plaintiff can perform simple

6  tasks at a consistent goal-oriented pace; can engage in

7  occasional interaction with supervisors, coworkers, and the

8  public; can make simple decisions; and can tolerate occasional

9  minor changes in the workplace.

10          At step four, the ALJ relied on the vocational

11 expert, also referred as the VE, testimony to determine that

12 Plaintiff was unable to perform any past relevant work.

13          Again, relying on the vocational expert testimony,

14 the ALJ found that, considering Plaintiff's age, education, work

15 experience, and RFC, that there are jobs that exist in

16 significant numbers in the national economy that he can perform.

17 More specifically, the vocational expert testified that

18 Plaintiff can perform the requirements of representative

19 unskilled light work occupations, such as parking lot or garage

20 cashier, gate attendant, and information clerk.

21          Accordingly, the ALJ found that Plaintiff was not

22 disabled from his application date through the date of his

23 May 25, 2022, decision.

24          I'll now turn to Defendant's arguments and

25 Plaintiff -- Plaintiff's pro sé status.

1          Defendant, the only moving party, argues that the

2     ALJ's sequential analysis and her ultimate determination that

3     Plaintiff was not disabled were supported by substantial

4     evidence.

5          Plaintiff was represented by counsel during the

6     administrative hearing and appeal process, but commenced this

7     proceeding via pro sé.  Plaintiff has filed various

8     correspondence and a copy of the Administrative Transcript with

9     the Court, but has not filed a formal brief or other arguments

10    responsive to Defendant's motion, despite being given an

11    opportunity to do so.

12          It is well settled that a Plaintiff bears the burden

13    of establishing disability.  In the Northern District of New

14    York, General Order No. 18 notifies parties of the consequences

15    of failing to file a brief in connection with a Social Security

16    action and, "A party's brief may be its only opportunity to set

17    forth arguments that entitle the party to a judgment in its

18    favor.  The failure to file a brief by either party may result

19    in the consideration of the record without the benefit of the

20    party's arguments."  A copy of General Order No. 18 was provided

21    to Plaintiff on August 30, 2022, see Docket No. 4.

22          "In a case such as this, where Plaintiff is

23    proceeding pro sé, General Order No. 18's promise of a

24    consideration of the merits complies with the special solicitude

25    that the Second Circuit mandates for pro sé litigants."  See

1   case of *Hubbard v. Commissioner of Social Security.*  That's

2   found at 6:14-CV-1401.  That is a Glenn T. Suddaby case found at

3   2016 WL 551783 at page 4, Northern District of New York,

4   January 14, 2016.  As such, even when a Plaintiff declines to

5   file a brief, a Court may, "examine the record to determine

6   whether the ALJ applied the correct legal standard and reached a

7   decision based on substantial evidence."  See the case that I

8   just cited, *Hubbard v. Commissioner*.  And in that case, the

9   *Hubbard* case, cites a case of *Gregorka v. Commissioner of Social*

10  *Security*.  That's found at 6:13-CV-1408.  That's also a Judge

11  Glenn T. Suddaby case.  That's found at 2015 WL 3915959 at page

12  4, and that's a Northern District of New York, June 25, 2015,

13  case.  Therefore, in deference to Plaintiff's pro sé status,

14  this Court will review each step of the ALJ's sequential

15  evaluation to determine whether it was supported by substantial

16  evidence.

17          That being said, this Court's functional role in this

18  case is limited and extremely deferential.  I must determine

19  whether correct legal principles were applied and whether the

20  determination is supported by substantial evidence, which is

21  defined as such relevant evidence as a reasonable mind would

22  find sufficient to support a conclusion.  As the Second Circuit

23  noted in *Brault v. Social Security Administration Commissioner,*

24  that's at 683 F.3d 443, a 2012 case, and, therein, the Second

25  Circuit stated that this standard is demanding, more so than the

1    clearly erroneous standard.  The Court noted in *Brault* that once

2    there's a finding of fact, that fact can be rejected only if a

3    reasonable factfinder would have to conclude otherwise.

4          The Court's going to begin its analysis as follows.

5    With the step two analysis of the ALJ, I'll note the following:

6    In considering Plaintiff's claims for benefits, the ALJ found

7    schizoaffective disorder, adjustment disorder, ADHD, substance

8    abuse disorder, and complex regional pain syndrome of the left

9    upper extremity were severe impairments because they imposed

10   more than a minimal harmful effect on Plaintiff's ability to do

11   basic work activities.  The ALJ explained that this

12   determination was based on medical and psychiatric diagnoses in

13   the available treatment record, as well as Plaintiff's

14   description of his symptoms, including physical pain.

15         This Court finds that the ALJ's analysis at step two

16   provides sufficient explanation indicating that she adequately

17   considered the evidence related to Plaintiff's alleged

18   impairments.  Therefore, the ALJ had substantial evidence to

19   support her conclusions at step two.

20         In the alternative, the Court finds that any error by

21   the ALJ in step two, such as failing to identify a severe

22   impairment, would be harmless because she found other

23   impairments severe, continued the sequential evaluation, and

24   provided adequate explanation in her decision showing she

25   properly considered the evidence related to Plaintiff's --

1   Plaintiff's various impairments.  Therefore, the ALJ's step two

2   determination does not present any grounds for remand.

3             Next, I'm going to address the step three analysis

4   performed by the ALJ.

5             To meet a listing, Plaintiff must show that his

6   medically determinable impairment satisfied all the specified

7   criteria in a listing.  Here, the ALJ considered the available

8   treatment record, as well as Plaintiff's testimony, to conclude

9   that Plaintiff did not have an impairment or combination of

10  impairments that meets or medically equals the severity of any

11  listed impairments.  With regard to medical impairments, the ALJ

12  properly considered what are known as the, "paragraph B," and,

13  "paragraph C," criteria and found no more than moderate

14  limitations across each of the respective functional areas.

15            The ALJ's thorough analysis at step three indicates

16  sufficient consideration of Plaintiff's impairments in relation

17  to the listings, and her findings are supported by substantial

18  evidence.  Therefore, the ALJ's step three determination does

19  not present any grounds for remand.

20            I'm next turning to the RFC analysis as conducted by

21  the ALJ.

22            RFC is defined as what an individual can still do

23  despite his or her limitations.  In other words, RFC is the

24  individual's maximum remaining ability to do sustained work --

25  excuse me, to do sustained work activities in an ordinary work

1    setting on a regular and continuing basis.

2         Here, Plaintiff's only documented physical impairment

3    was left shoulder pain.  In considering the resulting

4    limitations, the ALJ relied upon November and December 2021

5    physical therapy notes showing Plaintiff had normal range of

6    motion in his left shoulder, and a, "four out of five," muscle

7    strength with normal movement in the left arm.  The ALJ also

8    considered Plaintiff's testimony that he continued to experience

9    shoulder pain and had been unable to meet the 25-pound lifting

10   requirements at his former job.

11        There was no medical opinion in the record addressing

12   Plaintiff's physical impairments.  An ALJ may make a common

13   sense judgment about a claimant's physical RFC if the medical

14   evidence reveals minor physical impairments or minimal

15   treatment.  Here, the ALJ limited Plaintiff to light work that

16   required lifting or carrying no more than 15 pounds, along with

17   certain reaching and postural limitations based upon the

18   documented conservative treatment approach, while giving the

19   Plaintiff the, "benefit of the doubt," regarding his testimony

20   about his lifting restrictions and continued shoulder pain.

21        The ALJ considered three mental health opinions as

22   part her RFC evaluation.  Two non-examining state agency

23   consultants, that being Dr. Hoffman and Dr. Sherer, separately

24   reviewed Plaintiff's available psychiatric records and concluded

25   that he had no severe mental health impairments.  The ALJ

1   properly considered the supportability and consistency of these

2   opinions and found them unpersuasive in light of Plaintiff's

3   mental health treatment history that includes psychiatric

4   medication and outpatient therapy, as well as Plaintiff's own

5   description of his mental health symptoms.

6         The other mental health opinion in the record came

7   from treating psychiatrist Dr. Joshua Frank, who had seen

8   Plaintiff every one to two months since September of 2020.  Dr.

9   Frank authored a very restrictive opinion dated August 1, 2022,

10  indicating that Plaintiff had, "no useful ability to function,"

11  in almost every area listed on his evaluation form.  This

12  included an inability to remember work-like procedures, maintain

13  attention and concentration, or work in coordination with or in

14  proximity to others.

15        The ALJ appropriately evaluated the supportability

16  and consistency of Dr. Frank's opinion and found it

17  unpersuasive.  The opinion itself does not provide significant

18  narrative or reference relative treatment notes.  The ALJ found

19  that wholly inconsistent with Plaintiff's mental health history,

20  including Dr. Frank's own treatment notes, that documented

21  consistent improvement in his psychiatric symptoms after

22  Plaintiff began medication and therapy.  The ALJ cited multiple

23  treatment notes describing a stable mood, logical thought

24  processes, and an absence of delusions.  Although Plaintiff

25  testified that he experienced, "hallucinations," lasting up to

 1   half an hour, the ALJ noted that Plaintiff used the term,

 2   "hallucinations," with his therapist to describe, "a

 3   hyperfixation on events that he thinks should happen a certain

 4   way or within a certain time and then becoming agitated when

 5   they do not work out as planned."  See transcript at page --

 6   pages 16 and page 365.  The ALJ also noted that none of his

 7   treatment providers noted any actual delusions or

 8   hallucinations, and Plaintiff denied seeing or hearing things

 9   that were not there.  See transcript at pages 16, 254, 318, 349,

10   365, 391, 407, 423, 445, 463, 472, and 488.  The ALJ also noted

11   that Plaintiff had discontinued therapy in February 2022 with

12   his counselor's approval.

13          There's no requirement that the ALJ's RFC

14   determination mirror a particular medical opinion.  Rather, it

15   is the ALJ's responsibility to choose between properly submitted

16   medical opinions and other competent evidence to piece together

17   an overall RFC assessment.  Here, the ALJ relied upon multiple

18   consistent mental health evaluations, along with Plaintiff's own

19   assessment of his mental health, while rejecting medical

20   opinions that lacked support in the broader record.

21          In this case, Plaintiff testified that he felt

22   overwhelmed in crowds, had difficulty maintaining concentration,

23   and experienced episodes of depression and anxiety.  Although

24   the ALJ found some of this testimony inconsistent with the

25   documented improvement reflected in Plaintiff's treatment notes,

1    her RFC determination limited Plaintiff to unskilled work and

2    incorporated limitations on work pace, social interaction, and

3    workplace changes.  "The fact that the ALJ afforded Plaintiff

4    the benefit of the doubt," and included additional functional

5    limitations in the RFC is not grounds for remand.  See case

6    *Lesanti v. Commissioner of Social Security*.  That's found at 436

7    F. Supp. 3d 639 at page 649, and that's a Western District of

8    New York 2020 case.

9              Where an ALJ relies on Plaintiff's own testimony

10   about his functional abilities, there is a reduced concern that

11   the ALJ impermissibly, "played doctor," to determine Plaintiff's

12   functional limitations.  Because the ALJ's physical and mental

13   RFC determinations are supported by the available record and

14   those portions of Plaintiff's testimony that the ALJ reasonably

15   deemed to be most reliable, this Court finds that it was

16   supported by substantial evidence.  Therefore, the ALJ's RFC

17   determination does not present any grounds for remand.

18             I will next discuss the step five process by the ALJ.

19             If the ALJ utilizes a vocational expert at the

20   hearing, the VE is generally questioned using a hypothetical

21   question incorporating Plaintiff's limitations.  The ALJ may

22   rely on a vocational expert's testimony regarding the

23   availability of work as long as the hypothetical facts the

24   expert is asked to consider are based on substantial evidence

25   and accurately reflect Plaintiff's limitations.

1        Because this Court has found the ALJ's RFC

2   determination was supported by substantial evidence, it also

3   finds the ALJ's matching hypothetical to the vocational expert

4   was proper.  The ALJ also properly questioned the vocational

5   expert regarding the basis for her opinion and sought

6   explanation where her opinion relied on her professional

7   expertise rather than the standard definitions in the Dictionary

8   of Occupational Titles.

9        During her testimony, the vocational expert

10  identified a number of representative light and sedentary

11  occupations that an individual with Plaintiff's RFC could

12  perform.  This testimony provided substantial evidence for the

13  ALJ to determine that there were jobs existing in significant

14  numbers in the national economy that Plaintiff could perform.

15  Therefore, the ALJ's step five determination does not present

16  any grounds for remand.

17       Based on the foregoing, the ALJ's decision was based

18  upon correct legal standards, and substantial evidence supports

19  her ultimate determination that Plaintiff was not under a

20  disability through the date of her decision.

21       As a result, Defendant's motion for judgment on the

22  pleadings is granted, Plaintiff's complaint is dismissed, and

23  the Commissioner's decision denying Plaintiff benefits is

24  affirmed.

25       This constitutes the decision analysis of this Court

1  and I will transcribe and then append the transcript to a

2  written order and file that on the docket, which will be

3  provided to both parties.

4         That concludes our hearing for today.  I hope

5  everybody has a good rest of the afternoon and court stands

6  adjourned.  Thank you, all.

7         (Time noted:  1:33 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    CERTIFICATE OF OFFICIAL REPORTER

5

6

7               I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,

8    NYRCR, Official U.S. Court Reporter, in and for the United

9    States District Court for the Northern District of New York, DO

10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United

11   States Code, that the foregoing is a true and correct transcript

12   of the stenographically reported proceedings held in the

13   above-entitled matter and that the transcript page format is in

14   conformance with the regulations of the Judicial Conference of

15   the United States.

16

17             Dated this 15th day of February, 2024.

18

19             s/ Hannah F. Cavanaugh_____

20             HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

21             Official U.S. Court Reporter

22

23

24

25

2016 WL 551783
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kim HUBBARD, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

6:14-CV-1401 (GTS/WBC)

|

Signed 01/14/2016

**Attorneys and Law Firms**

KIM HUBBARD, PRO SE, 270 Day Ave., Rome, NY 13440.

DANIEL R. JANES, ESQ., U.S. SOCIAL SECURITY ADMIN., OFFICE OF REG'L GEN. COUNSEL – REGION II, Counsel for Defendant, 26 Federal Plaza – Room 3904, New York, NY 10278.

*REPORT and RECOMMENDATION*

William B. Mitchell Carter, U.S. Magistrate Judge

**\*1** This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 19.) This case has proceeded in accordance with General Order 18.

Currently before the Court, in this Social Security action filed by Kim Hubbard ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is Defendant's unopposed motion for judgment on the pleadings. (Dkt. No. 17.) For the reasons set forth below, it is recommended that Defendant's motion be granted.

**I. RELEVANT BACKGROUND**

**A. Factual Background**

Plaintiff was born on July 20, 1982. (T. 88.) She completed four years of college. (T. 109.) Generally, Plaintiff's alleged disability consists of diabetes, attention deficit hyperactivity disorder ("ADHD"), back impairments, and anxiety. (T. 108.) Her alleged disability onset date is September 22, 2010.

(T. 60.) Her date last insured is June 30, 2015. (*Id.*) She previously worked as a customer service representative, medical records scanner, processor, waitress, and child care provider. (T. 109.)

**B. Procedural History**

On February 25, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 60.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 11, 2013, Plaintiff appeared, pro se, before the ALJ, David J. Begley. (T. 25–59.) The ALJ advised Plaintiff of her right to be counseled by an attorney or representative, but Plaintiff waived that right. (T. 28–29.) On June 5, 2013, ALJ Begley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7–24.) On September 22, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1–4.) Thereafter, Plaintiff, again appearing pro se, timely sought judicial review in this Court. On November 19, 2014, the Court issued Plaintiff a copy of this Court's General Order 18, governing the procedural rules with respect to Social Security appeals. (Dkt. No. 3.) At that time the Court also issued Plaintiff a copy of the Pro Se Handbook and Notice. (Dkt. No. 4.)

Pursuant to General Order 18, plaintiffs are notified that "the failure to file a brief as required by this order will result in the consideration of this appeal without the benefit of plaintiff's arguments and may result in a decision heavily influenced by the commissioner's version of the facts and subsequent dismissal of your appeal." N.D.N.Y. General Order 18 at 4.

Plaintiff failed to file a brief by the April 27, 2015 deadline and because of her pro se status, the Court granted an extension to June 1, 2015. (Dkt. No. 14.) Plaintiff failed to file a brief by June 1, 2015 and the Court directed Defendant to file her brief. (Dkt. No. 15.) As of the date of this report and recommendation, Plaintiff has not filed a brief.

**C. The ALJ's Decision**

**\*2** Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12–24.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2015 and Plaintiff had not engaged in substantial gainful activity since September 22, 2010. (T. 12.) Second, the ALJ found that Plaintiff had the

Hubbard v. Commissioner of Social Security, Not Reported in Fed. Supp. (2016)

Case 8:22-cv-00901-ML    Document 30    Filed 02/20/24    Page 20 of 29

severe impairments of diabetes mellitus, hyperthyroidism, degenerative disc disease of the lumbar and cervical spine, left wrist tendinitis, left wrist carpal tunnel syndrome (status post release), right wrist capsulitis, panic disorder, and ADHD. (*Id*.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 12-13.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except Plaintiff:

> [could] not climb ladders, ropes, or scaffolds; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl; work [was] limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, work-place changes, and only occasional interaction with coworkers and supervisors; [and] no regular interaction with the general public.

(T. 13–14.) [1] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 20–21.)

## II. DEFENDANT'S BRIEFING ON HER MOTION FOR JUDGMENT ON THE PLEADINGS

In support of her motion for judgment on the pleadings, Defendant makes four arguments. First, Defendant argues Plaintiff knowingly and voluntarily waiver her right to representation. (Dkt. No. 17 at 11–12 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's RFC finding was supported by substantial evidence. (*Id*. at 12–14.) Third, Defendant argues the ALJ's step five finding was supported by substantial evidence. (*Id*. at 14.) Fourth, and lastly, Defendant argues Plaintiff failed to meet her burden. (*Id*. at 14–15.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.

*See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.

*See* *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

**\*3** "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See* *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

Hubbard v. Commissioner of Social Security, Not Reported in Fed. Supp. (2016)

Case 8:22-cv-00901-ML   Document 30   Filed 02/20/24   Page 21 of 29

**A. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See* *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the

[Commissioner] must prove the final one.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

**IV. ANALYSIS**

In a civil case, the Court may dismiss an action where, as here, "the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order...." Fed.R.Civ.P. 41(b); *Storey v. O'Brien,* No. 10–3303, 2012 WL 1889408, at *1 (2d Cir. May 25, 2012). Further, other districts in the Second Circuit have dismissed Social Security appeals, sua sponte, due to a pro se plaintiff's failure to prosecute. *See* *Gonzalez v. Commissioner of Social Security,* No. 09–CV–10179, 2011 WL 2207574, at *2 (S.D.N.Y. June 2, 2011), *see also* *Winegard v. Barnhart,* No. 02–CV–6231, 2006 WL 1455479, at *9–10 (W.D.N.Y. Apr. 5, 2006). However, the Court declines to do so in this case.

**\*4** In this District, General Order No. 18 mandates a different course in Social Security cases. General Order 18 cautions plaintiffs that "Plaintiff's brief is the only opportunity for Plaintiff to set forth the errors Plaintiff contends were made by the Commissioner of Social Security that entitle Plaintiff to relief. The failure to file a brief as required by this Order will result in the consideration of this appeal without the benefit of Plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of your appeal." N.D.N.Y. General Order No. 18 at 4. General Order 18 thus states that the Court will "consider" the case notwithstanding a plaintiff's failure to file a brief, albeit in a way that might be "heavily influenced by the Commissioner's version of the facts." *Id.* In a case such as this, where Plaintiff is proceeding pro se, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants. Accordingly, the Court has, despite Plaintiff's failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence. *See* *Gregorka v. Comm'r of Soc. Sec.,* No. 6:13–CV–1408, 2015 WL 3951959, at *4 (N.D.N.Y. June 25, 2015).

After a careful review of the administrative record on appeal, the Court recommends the Commissioner's determination be

Case 8:22-cv-00901-ML   Document 30   Filed 02/20/24   Page 22 of 29

Hubbard v. Commissioner of Social Security, Not Reported in Fed. Supp. (2016)

affirmed, for the reasons stated in Defendant's memorandum of law, that (1) the Plaintiff knowingly and voluntarily waived her right to representation, (2) the ALJ's RFC finding was supported by substantial evidence, (3) the ALJ's step five finding was supported by substantial evidence, and (4) Plaintiff failed to meet her burden. (Dkt. No. 17 at 11–15 [Def.'s Mem. of Law].)

### A. Plaintiff Knowingly and Voluntarily Waived Her Right to Representation

Although plaintiffs do not have a constitutional right to counsel at a Social Security hearings, they do have a statutory and regulatory right to be represented if they chose to obtain counsel. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. Here, the Commissioner sent Plaintiff an acknowledgement letter explaining the hearing process and advising her of her right to representation, as well as the availability of free legal services. (T. 77–78.) At the hearing, the ALJ again reviewed with Plaintiff her right to have representation and Plaintiff knowingly waived that right. (T. 28–30.) Therefore, the Commissioner and ALJ complied with their obligations to inform Plaintiff of her right to counsel and Plaintiff knowingly and voluntarily waived her right.

### B. The ALJ's RFC Determination

A plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). Here, the ALJ's RFC determination was supported by substantial evidence, specifically, the medical source opinions of consultative examiners Dennis Noia, M.D. and Pamela Tabb, M.D.

An ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08–CV–1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010).

Dr. Noia performed a psychiatric consultative exam on April 30, 2012. At that time he observed Plaintiff was cooperative and her manner of relating, social skills, and overall presentation were adequate. (T. 205.) He further observed her speech was normal, her thought process was normal, her mood was calm, and her affect was congruent. (T. 206.) Dr. Noia observed Plaintiff's attention and concentration were intact, her recent and remote memory skills were "mildly to moderately" impaired; and her intellectual functioning was

average. (*Id.*) In a medical source statement, Dr. Noia opined Plaintiff was capable of understanding and following simple instructions and directions; capable of performing simple and some complex tasks; capable of maintaining attention and concentration; could regularly attend to a routing and maintain a schedule; capable of making appropriate decisions; able to relate to and interact moderately well with others; and Plaintiff had some difficulty dealing with stress. (T. 206–207.) [2]

**\*5** Dr. Tabb performed a physical consultative exam on April 30, 2012. At that time she observed Plaintiff appeared in no acute distress, had a normal gait, could walk on heels and toes, needed no help changing for exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 209.) Dr. Tabb observed Plaintiff's cervical spine and lumbar spine showed full flexion, extension, later flexion bilaterally and full rotary movement bilaterally. (T. 210.) Dr. Tabb observed Plaintiff had full range of motion in her shoulders, elbows, forearms, and wrists bilaterally. (*Id.*) Dr. Tabb observed Plaintiff had mild tenderness in the medial aspect of her left wrist. (*Id.*) In a medical source statement Dr. Tabb opined Plaintiff had mild restrictions for performing activities involving repetitive movement of the left wrist. (T. 211.) [3]

In making his physical RFC determination, the ALJ also relied on objective medical imaging from March of 2012 which indicated "very minimal" degenerative change and "mild" disc space narrowing in the mid thoracic spine. (T. 200.) Medical imaging from March of 2012 indicated degenerative disc disease with "mild" multilevel bulging in the lumbar spine. (T. 201.) Medical imaging of Plaintiff's cervical spine revealed "mild" disc desiccation with "minimal" disc bulging at multiple levels.

The ALJ thoroughly discussed all the medical evidence in the record and his RFC determination was supported primarily by the consultative examiners, Drs. Noia and Tabb. In addition to Dr. Tabb's opinion, the ALJ's physical RFC determination was supported by Plaintiff's treating physicians who reported Plaintiff had normal gait and stance, appeared in no acute distress, ambulated well, and had negative straight leg raises. (T. 182–185, 192–197.)

Plaintiff's orthopedic surgeon, Gregory Shankman, M.D., completed a medical source statement in August of 2007, which the ALJ discussed in his opinion but ultimately rejected. Dr. Shankman opined Plaintiff's pain was "too

Case 8:22-cv-00901-ML   Document 30   Filed 02/20/24   Page 23 of 29

Hubbard v. Commissioner of Social Security, Not Reported in Fed. Supp. (2016)

severe for her to work" and she was "totally and permanently disabled." (T. 161.) Dr. Shankman further opined Plaintiff could not walk for more than five minutes without pain, could not sit for more than five minutes without severe pain, and could not sleep for more than a few hours without pain. (*Id.*) He opined Plaintiff could not lift or carry more than ten pounds. (*Id.*) The ALJ properly assigned Dr. Shankman's opinion "limited weight" because there were no records to support his opinion, Plaintiff's own allegations of limitations were not as restrictive as Dr. Shankman's, and the opinion predated Plaintiff's alleged onset date by over three years. Therefore, for the reasons stated herein, and for the reasons provided in Defendant's brief, the ALJ's RFC determination was supported by substantial evidence.

### C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue,* 614 F.Supp.2d 252, 270 (N.D.N.Y.2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.,* 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir.2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood,* 614 F.Supp.2d at 270.

**\*6** "The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.,* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's

capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.,* see 20 C.F.R. § 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue,* 534 F. App'x 71, 75 (2d Cir.2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ properly applied the Regulations in his credibility analysis. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (T. 15.) The ALJ provided an accurate synopsis of Plaintiff's testimony. (T. *Id.*) The ALJ discussed objective medical evidence and opinion evidence which he found to be inconsistent with Plaintiff's statements. (T. 15–18.) The ALJ discussed Plaintiff's activities of daily living, treatment she received for her impairments including medication, and aggravating factors. (T. 15.) Therefore, for the reasons stated herein, the ALJ properly adhered to the Regulations in making his credibility determination and substantial evidence supports the ALJ's credibility determination.

### D. The ALJ's Step Five Determination

Hubbard v. Commissioner of Social Security, Not Reported in Fed. Supp. (2016)

Case 8:22-cv-00901-ML   Document 30   Filed 02/20/24   Page 24 of 29

At step five of the sequential process, the ALJ considered Plaintiff's age, education, and RFC, to determine whether there were a significant number of jobs in the national economy which Plaintiff could perform. 20 C.F.R. § 404.1569. In making his determination, the ALJ relied on the testimony of a vocational expert ("VE"). (T. 5658.) At the hearing the VE testified that based on a hypothetical individual with Plaintiff's age, education, and RFC, there were jobs that existed in significant numbers in the national economy which she could perform. (T. 56–57.) Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See* Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). **ACCORDINGLY**, based on the findings above, it is

**\*7 RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2016 WL 551783

---

### Footnotes

1    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

2    Plaintiff did not undergo mental health treatment. In November of 2011, during an evaluation by her orthopedic provider, Plaintiff denied depression and anxiety. (T. 183.) In December of 2011, Plaintiff complained to her primary care provider of "slight depression." (T. 177.) A prescription history indicated Plaintiff was prescribed Alprazolam for her anxiety by Scott Brehaut, M.D. (T. 167.)

3    In June of 20120, subsequent to Plaintiff's examination by Dr. Tabb, she underwent CTS release surgery. (T. 255.)

---

**End of Document**　　　　　　　　　　© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3915959
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Leo GREGORKA; and Eve Gregorka, Plaintiffs,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. 6:13–CV–1408 (GTS/TWD).
|
Signed June 25, 2015.

**Attorneys and Law Firms**

Leo Gregorka and Eve Gregorka, Little Falls, NY, pro se.

Hon. Richard S. Hartunian, United States Attorney for the Northern District of New York, Albany, NY, Office of General Counsel, Social Security Administration, Emily M. Fishman, Esq., of Counsel, New York, NY, for Defendant.

### *DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** The above matter comes to this Court following a Report–Recommendation by United States Magistrate Judge Thérèse Wiley Dancks, filed on May 28, 2015, recommending that the Commissioner's decision denying benefits be affirmed with regard to Social Security income benefits ("SSI") but reversed with regard to disability insurance benefits ("DIB"). (Dkt. No. 14.) No objections to the Report–Recommendation have been filed and the time in which to do so has expired. After carefully reviewing all of the papers herein, including Magistrate Judge Dancks' thorough Report–Recommendation, the Court can find no error in the Report–Recommendation, clear or otherwise. As a result, the Report–Recommendation is accepted and adopted in its entirety; and the case is remanded to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 20) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the Commissioner's decision is **AFFIRMED** with regard to the denial of SSI benefits but **REVERSED** with regard to the denial of DIB benefits; and it is further

**ORDERED** that this matter is **REMANDED** to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

### *REPORT AND RECOMMENDATION*

THÈRÈSE WILEY DANCKS, United States Magistrate Judge.

This matter was referred to the undersigned for report and recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Oral argument was not heard. For the reasons discussed below, it is recommended that the Court affirm the Commissioner's finding that Plaintiffs are not entitled to supplemental security income ("SSI") benefits but remand the disability insurance benefits ("DIB") claim to the Commissioner for further proceedings.

### I. BACKGROUND AND PROCEDURAL HISTORY

On June 9, 2011, Thomas Leo Gregorka ("Mr.Gregorka") submitted applications for SSI and DIB. (Dkt. No. 15–2 at 21.) The applications were denied on December 13, 2011. *Id.* On January 19, 2012, Mr. Gregorka filed a request for a hearing before an Administrative Law Judge ("ALJ"). *Id.* Mr. Gregorka died on April 1, 2012. *Id.* Mr. Gregorka was fifty-eight years old when he died. *Id.* at 30.

Plaintiffs Leo and Eve Gregorka, the parents of Mr. Gregorka, filed a substitution of party to proceed with the hearing requested by their son. (Dkt. No. 15–2 at 21.) They did not, however, wish to appear at the hearing in person. *Id.* Thus, the ALJ based his decision on the record alone. *Id.*

**\*2** On June 19, 2012, the ALJ issued a decision finding that Mr. Gregorka was not disabled. (Dkt. No. 15–2 at 21–31.) Plaintiffs filed a request for review by the Appeals Council

Case 8:22-cv-00901-ML   Document 30   Filed 02/20/24   Page 26 of 29

(Dkt. No. 15–2 at 16) and submitted additional evidence (Dkt. No. 15–2 at 5). On September 5, 2013, the Appeals Council issued separate decisions on Mr. Gregorka's SSI claim and his DIB claim. (Dkt. No. 15–2 at 1–4, 8 .) The Appeals Council dismissed the request for review of the SSI claim, finding that Plaintiffs were not proper parties pursuant to Social Security regulations. (Dkt. No. 15–2 at 8.) The Appeals Council denied the request for review of the DIB claim, finding that there was no basis for changing the ALJ's decision. (Dkt. No. 15–2 at 2, 3.)

Plaintiffs commenced this action on November 12, 2013. (Dkt. No. 1.)

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a claimant seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority ( 42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step

sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir.2014.) "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).

**\*3** The claimant bears the burden of proof regarding the first four steps. Kohler v. As true, 546 F.3d 260, 265 (2d Cir.2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996)). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove that the claimant is capable of working. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Featherly v. Astrue, 793 F.Supp.2d 627, 630 (W.D.N.Y.2011) (citations omitted); Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir.1987)). A reviewing court

may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson,* 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart,* 717 F.Supp.2d 241, 248 (N.D.N.Y.2010); [1] *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly,* 793 F.Supp.2d at 630; *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams,* 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972); *see also Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982).

### III. THE ALJ'S DECISION

Here, the ALJ found at step one that Mr. Gregorka was not engaged in any substantial gainful activity from September 27, 2008, to April 1, 2012. (Dkt. No. 15–2 at 23.) At step two, the ALJ found that Mr. Gregorka suffered from the severe conditions of hypertensive and arthroscopic cardiovascular disease, chronic obstructive pulmonary disease, degenerative disc disease of the cervical and lumbar spine, and physical

residuals from chronic alcohol abuse, including seizures, near syncope, and tremor. *Id.* at 23–24. The ALJ found that Mr. Gregorka did not have any severe mental impairment, granting "great weight" to the medical opinion of a non-examining agency medical consultant and "little weight" to the opinion of consultative psychologist Dennis Noia, Ph .D. *Id.* at 25. At step three, the ALJ found that none of Mr. Gregorka's impairments met or medically equaled a listed impairment. *Id.* at 25–26. At step four, the ALJ found that Mr. Gregorka had the RFC to perform medium work, except that he needed to avoid climbing ladders or scaffolds and should avoid working at heights or around dangerous machinery. *Id.* at 26. Based on that RFC, the ALJ found that Mr. Gregorka was not able to perform any past relevant work. *Id.* at 29. At step five, however, the ALJ found that Mr. Gregorka could perform jobs that exist in significant numbers in the national economy. *Id.* at 30. Accordingly, the ALJ found that Mr. Gregorka was not disabled. *Id.* at 30–31.

### IV. PLAINTIFFS' FAILURE TO FILE A BRIEF

**\*4** This Court's General Order 18 sets forth the briefing schedule in Social Security cases. After Plaintiffs failed to comply with General Order 18, the undersigned issued an order of June 9, 2014, which directed Plaintiffs to file their brief within forty-five days after service of Defendant's brief. (Dkt. No. 17.) Despite this, Plaintiffs filed neither papers opposing Defendant's motion nor a request to enlarge the time within which to oppose Defendant's motion.

In the usual civil case, a plaintiff's failure to comply with court orders would subject the complaint to dismissal under Federal Rule of Civil Procedure 41(b). In addition, other Districts in the Second Circuit have held that where a Social Security plaintiff files a complaint but fails to file a brief on the merits, the complaint is conclusory and insufficient to defeat a motion for judgment on the pleadings. *Winegard v. Barnhart,* No. 02–CV–6231 CJS, 2006 U.S. Dist. LEXIS 31973, at *27–28, 2006 WL 1455479, at *9–10 (W.D.N.Y. Apr.5, 2006); *Feliciano v. Barnhart,* Civ. No. 04–9554 KMW AJP, 2005 U.S. Dist. LEXIS 14578, at *34–36, 2005 WL 1693835, at *10 (S.D.N.Y. July 21, 2005); *Reyes v. Barnhart,* Civ. No. 01–4059 LTS JCF, 2004 U.S. Dist. LEXIS 3689, at *6–7, 2004 WL 439495, at *3 (S.D.N.Y. Mar.9, 2004).

In this District, however, General Order No. 18 mandates a different course in Social Security cases. General Order 18 cautions plaintiffs that "Plaintiff's brief is the only opportunity for Plaintiff to set forth the errors Plaintiff contends were

made by the Commissioner of Social Security that entitle Plaintiff to relief. The failure to file a brief as required by this Order will result in the consideration of this appeal without the benefit of Plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of your appeal." (General Order No. 18 at 4.) General Order 18 thus states that the Court will "consider" the case notwithstanding a plaintiff's failure to file a brief, albeit in a way that might be "heavily influenced by the Commissioner's version of the facts." *Id.* In a case such as this, where the plaintiff is proceeding pro se, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants. Accordingly, the Court has, despite Plaintiffs' failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence.

## V. DISCUSSION

### A. SSI Claim

The ALJ denied Mr. Gregorka's claim for both SSI and DIB on the merits. (Dkt. No. 15–2 at 21–31.) The Appeals Council dismissed Plaintiffs' request for review of the ALJ's decision regarding SSI on the grounds that Plaintiffs were not eligible survivors for underpayment of SSI under the agency's regulations. *Id.* at 8. In their complaint, Plaintiffs explicitly challenge the denial of "Title II benefits (Social Security Disability)." (Dkt. No. 1 at 1.) The complaint does not explicitly challenge the denial of SSI benefits under Title XVI. Defendant argues that to the extent that the complaint can be construed as asserting an SSI claim, that claim is moot and was properly dismissed by the Appeals Council. (Dkt. No. 18 at 8–10.) Defendant is correct.

**\*5** Agency regulations drastically limit the categories of individuals who can recover benefit underpayments on behalf of a deceased individual. 20 C.F.R. § 416.542(b)(4). Surviving parents can recover only if the deceased underpaid recipient was a disabled or blind child when the underpayment occurred. 20 C.F.R. § 416.542(b)(2)-(3). A "child" is an individual under the age of eighteen or an unmarried individual under the age of twenty-two who is attending school. 20 C.F.R. § 416.1856. Here, Mr. Gregorka

was fifty-seven years old when he applied for SSI. (Dkt. No. 15–2 at 21, 30.) Accordingly, Plaintiffs are not the surviving parents of a disabled child pursuant to agency regulations. Therefore, it is recommended that the Court affirm the Commissioner's finding that Plaintiffs are not entitled to recover SSI benefits.

### B. DIB Claim

Defendant concedes that remand is appropriate regarding Plaintiffs' DIB claim. (Dkt. No. 18 at 10–14.) Specifically, remand is appropriate because it is not clear from the Appeals Council's decision whether it considered four medical assessments by Mr. Gregorka's treating physician that were submitted as new evidence. (Dkt. No. 15–2 at 5; Dkt. No. 15–9 at 59–66.) Those assessments related to the period on or before the ALJ's decision and contradicted the ALJ's RFC finding. (Dkt. No. 15–9 at 59–66.) The Appeals Council was thus required to consider it. 20 C.F.R. § 404.970(b). Accordingly, it is recommended that the Court remand this matter to the Commissioner for further proceedings regarding Plaintiff's DIB claim.

**WHEREFORE,** it is hereby

**RECOMMENDED,** that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), [2] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 87 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15, 16 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

Dated: May 28, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3915959

## Footnotes

1    On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart,* 717 F.Supp.2d 241, 2010 U.S. Dist. LEXIS 55442, 2010 WL 2326142 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.,* 717 F.Supp.2d 241, 2010 U.S. Dist. LEXIS 55442, 2010 WL 2326142 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart,* 717 F.Supp.2d 241 (N.D.N.Y.2010). The Court has used the title listed by Westlaw.

2    Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

---

**End of Document**                                                                 © 2024 Thomson Reuters. No claim to original U.S. Government Works.